STEVEN SINGER, a/k/a KENNETH ASCHAUER, PLAINTIFF-RESPONDENT, v. STATE OF NEW JERSEY, DEFENDANT-PETITIONER.

Argued May 21, 1973—Decided July 5, 1973.

Mr. *Michael S. Bokar,* Deputy Attorney General, argued the cause for petitioner (Mr. *Stephen Skillman,* Assistant Attorney General, of counsel; Mr. *George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

Mr. *Gerald T. Foley, Jr.,* Deputy Public Defender, argued the cause for respondent (Mr. *Stanley C. Van Ness,* Public Defender, attorney).

PER CURIAM. Plaintiff, age 21, has a long history of mental illness. He escaped from a New York State mental hospital and came to the City of Newark where he was taken into custody. Because of his illness he was committed to the Trenton Psychiatric Hospital. There, we are told, he attacked a retarded patient who died as a result. No criminal charge was leveled, and this because of plaintiff's evident insanity, "schizophrenia, chronic undifferentiated type." He is described as "a very serious behavior problem" and "unmanageable" and "unpredictable." He was transferred to another building, the Forensic Psychiatric Section (formerly known as the Vroom Building), which is part of the same hospital complex. The Forensic Psychiatric Section is the only hospital with maximum security facilities. Because there was no criminal charge against plaintiff, the Appellate Division directed that he be transferred "from the Vroom Building to a more suitable place for treatment as soon as conveniently possible, and in all events within 30 days." There being no other maximum security facility, the State

filed a petition for certification with us, and we granted a stay pending disposition of the petition.

Thereafter plaintiff was transferred to an institution in the State of Florida pursuant to the Interstate Compact on Mental Health, *N. J. S. A.* 30:7B-1 *et seq.*, and this at the instance of his mother who moved from New York to Florida. The case accordingly is moot, but since the decision of the Appellate Division has serious implications with respect to the operation of the State mental hospitals, we concluded the issue raised by the petition should be resolved. To that end, certification is granted.

The Appellate Division said:

> "We hold that the Vroom Building is not the proper place to confine plaintiff. He has a right to be treated 'in accordance with the highest accepted standards.' *N. J. S. A.* 30:4-24.1. As we noted in *In re D. D.*, 118 *N. J. Super.* 1, 6 (1971), 'The continuing failure to provide suitable and adequate treatment cannot be justified by lack of staff or facilities.' We find nothing in plaintiff's situation to distinguish his case from *In re D. D.*"

*In re D. D.*, thus relied upon by the Appellate Division, involved a 17-year-old patient who was transferred to the female wing of the Vroom Building. Her confinement there was challenged as unwarranted by her medical condition. All the medical testimony supported the patient's claim, it appearing that the patient was transferred only because the employees in the so-called "civil section" would "walk out immediately." 118 *N. J. Super.* at 5. Having concluded that "the Vroom Building is not a proper place in which to confine Debbie" and that "The only medical witnesses so agreed," the Appellate Division said, 118 *N. J. Super.* at 5–6:

> "* * * We might add that she is the only juvenile there. The other female patients are all adults and the majority have been committed to that unit because they are criminally insane. The only possible reason for keeping Debbie there is because of its maximum security feature. But this reason is greatly outweighed by the building's detrimental factors. * * *"

In the case at hand, it is not disputed that the patient's mental condition required maximum security and thus this case is different from *In re D. D.* It is simply asserted that the majority of the patients in the Forensic Psychiatric Section are "criminally insane" and for that reason, the Forensic Section is not a "proper place" for plaintiff. We know that some of the patients are under a jail sentence, while others, although involved with criminal charges, are there following an acquittal by reason of insanity or following a finding that they could not stand trial because of insanity. The record does not reveal the number of patients falling within each of those categories or the number who had no criminal charges pending against them. Nor is there evidence that because of the fact that some patients are convicts, the security exceeds that required by the mental illnesses or that the security applied to plaintiff was excessive on that account. Nor is there evidence that the presence of the mentally ill who are also convicts was otherwise injurious in fact to plaintiff. Thus in substance it is contended that the State must maintain separate maximum security facilities for the "civil" as distinguished from "criminal" insane, and that the Forensic Psychiatric Section must be deemed to be inappropriate for "civil" patients because "criminal" patients are also sent there.

The Trenton Psychiatric Hospital, including the Forensic Psychiatric Section, is a hospital and not a correctional institution. *N. J. S. A.* 30:1-7, 30:4-160. Surely a hospital does not become a jail merely because convicts are admitted when they are ill. We should assume the hospital authorities deem all who are assigned to them to be patients and to be in their care because they are "sick," whether or not they have been adjudged to be "bad" in a criminal proceeding. *N. J. S. A.* 30:4-24.1 requires "humane care and treatment" and provides that:

"Mechanical restraints, including isolation, shall not be applied in the care or treatment of any mentally ill or mentally retarded individual unless required by his medical needs * * *."

We cannot assume this mandate was disobeyed.

Absent evidence that the housing together of both categories of patients injures the non-convict patient in some way, we see no basis for interference with the administrative operation of the mental hospitals. There being no proof in the record that the security at the Forensic Psychiatric Section was inappropriate in the light of plaintiff's illness or that the makeup of the patient population or any other fact resulted in unnecessary restraint upon plaintiff or in injury of some other kind, the judgment must be reversed.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, MOUNTAIN and SULLIVAN, and Judges CONFORD and COLLESTER—7.

*For affirmance*—None.