156 N.J. Super. 91 (1978)
383 A.2d 467
IN THE MATTER OF THE HOSPITALIZATION OF EDWARD PATTERSON AND CHESTER BOHUK.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1978.
Decided February 1, 1978.
*92 Before Judges HALPERN, LARNER and KING.
Mr. Joseph T. Maloney, Deputy Attorney General, argued the cause for appellant Ann Klein, Commissioner of the Department of Human Services (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel and on the brief; Mr. Steven Wallach, Deputy Attorney General, on the brief).
Ms. Julie Kligerman, Assistant Deputy Public Advocate, argued the cause for respondents (Mr. Stanley C. Van Ness, Public Advocate of New Jersey, attorney).
The opinion of the court was delivered by KING, J.A.D.
This appeal is taken by the Commissioner of the Department of Human Services, Ann Klein, from orders of the trial court transferring inmates Patterson and Bohuk, both convicted of violent crimes and serving lengthy State Prison sentences, from the maximum security Forensic Psychiatric Section (Forensic Section), sometimes known as the Vroom Building, at the Trenton Psychiatric Hospital, to the state mental hospitals at Ancora and Marlboro, respectively. We have stayed the orders of transfer pending resolution of this appeal.
Patterson was sentenced to State Prison for 13 to 15 years following a conviction for rape committed while he was a patent at the Ancora Psychiatric Hospital. Bohuk was sentenced to State Prison for a life term following a conviction for murder. Both inmates required psychiatric care *93 while serving their sentences at the State Prison and were transferred by the Commissioner to the maximum security Forensic Section for treatment. There is no psychiatric, facility in the State Prison.
Patterson and Bohuk came before the trial court pursuant to the commitment and review procedures embodied in N.J.S.A. 30:4-82 and R. 4:74-7. The trial judge in a reported opinion, 148 N.J. Super. 515 (Cty. Ct. 1977), ordered the transfers to the minimum security hospitals at Marlboro and Ancora on the basis of the convicted inmates' right to treatment under the least restrictive conditions as patients of the state mental hospital system pursuant to N.J.S.A. 30:4-24.2(e)(2). We find the trial court had no jurisdiction to order the transfers and reverse.
The controversy involves a question of statutory construction, i.e., whether the Commissioner or the trial court has the power to order the transfer and designate the institution appropriate for the treatment of State Prison inmates who become mentally ill or require psychiatric care while serving sentences. The question has never been directly confronted judicially and the legislative intent in this precise situation is not expressly stated.
The Forensic Section of the Trenton Psychiatric Hospital is the only mental hospital in the system with maximum security facilities. The population of the Forensic Section is composed of persons who have become mentally ill or require psychiatric care while serving criminal sentences, persons unable to stand trial because of mental illness, and persons tried and acquitted by reason of insanity. The Forensic Section is also used to house patients civilly committed to the state hospital system requiring a maximum security facility because of their particularly dangerous tendencies. See Singer v. State, 63 N.J. 319 (1973).
Prior to these hearings, which were conducted in January 1977, the Commissioner announced a policy by administrative bulletin requiring sentenced prisoners, convicted of enumerated violent crimes, including rape and murder, to be *94 placed in the Forensic Section when transferred from the prison system to the psychiatric hospital system. The Commissioner contends she has the sole power to make this decision under the controlling statutes, subject only to the usual standard for appellate review of state administrative action by the Appellate Division under R. 2:2-3(a)(2). The Public Advocate, on behalf of Patterson and Bohuk, contends there is concurrent jurisdiction, shared by the trial courts and the Commissioner, to effect transfers and designate the proper institution for treatment.
N.J.S.A. 30:4-25 defines five classes of commitments. Involuntary commitment of a person serving a criminal sentence is designated Class "E" and controlled by N.J.S.A. 30:4-82 which states, in part pertinent to this issue, that when any person confined under sentence becomes mentally ill the County Court may, "in an action like an action for commitment, determine the mental or physical condition and legal settlement of such person." If the court concludes the inmate is mentally ill, the statute directs removal from confinement in the penal system and orders confinement "in one of the institutions for the care and treatment of such persons owned by this State" or "owned by one of the counties of this State, until such person is improved or removed or discharged according to law." Id.
The Public Advocate, on behalf of Patterson and Bohuk, urges the following language from N.J.S.A. 30:4-82 supports his contention that the trial judge has the power to select the institution where a State Prison inmate may be confined for treatment of mental illness:
The court may, in its discretion, order the removal of such person so confined as aforesaid from the institution in which he is confined, and may order his confinement in another one of the institutions in this State. [Emphasis supplied]
It is urged that this section of the statute gives the County Court the power to select the institution for treatment and to transfer the patient within the mental hospital *95 system once it has ordered the release from penal confinement because of mental illness. This contention would perhaps be acceptable if the italicized words "so confined" in fact refer only to the inmate's confinement within the mental hospital system following removal from penal confinement. However, the statute uses the term "confinement" in reference to both penal and hospital commitments, not simply in reference to hospital admissions. For instance, the statute confers the power on the County Court, upon remission of symptoms, to remand to the place in which he was "confined under commitment, indictment or sentence." The above-quoted portion of N.J.S.A. 30:4-82 just as likely refers to the court's order of removal from penal confinement and placement in the mental hospital system, as it does to any inter-institutional transfer power. Nor does the quoted section clearly say the court shall select the institution for treatment. We cannot find any clear expression of legislative intent within the four corners of N.J.S.A. 30:4-82 to give the County Court the power to select the institution for treatment or effect inter-institutional transfers, once the inmate has entered the mental hospital system. N.J.S.A. 30:4-82 is clear only as to the judicial power to remove an inmate from the penal system and order a return thereto. We must therefore look elsewhere in the controlling statutes for evidence of legislative intent. 2A Sutherland, Statutory Construction (4 ed. 1973), § 51.02 at 290-91.
The Commissioner relies upon an analysis of the overall statutory scheme to support her contention that she has the authority to determine where a patient within the State's mental health system will be maintained, and the nature of the patient's treatment program. The Commissioner is the principal executive officer of the Department of Human Services. N.J.S.A. 30:1-2; N.J.S.A. 30:1-11. She has control over the institutions listed in N.J.S.A. 30:1-7, including the four psychiatric hospitals  Trenton, Greystone Park, Marlboro and Ancora  as well as the New Jersey Neuropsychiatric Institute located at Skillman. She *96 is assisted by division directors "who shall be qualified by training and experience." N.J.S.A. 30:1-9. The Commissioner's broad powers are set forth as follows in N.J.S.A. 30:1-12:
The commissioner shall have power to determine all matters relating to the unified and continuous development of the institutions and noninstitutional agencies within his jurisdiction. He shall determine all matters of policy and shall have power to regulate the administration of the institutions or noninstitutional agencies within his jurisdiction, correct and adjust the same so that each shall function as an integral part of a general system. The rules, regulations, orders and directions issued by the commissioner pursuant thereto, for this purpose shall be accepted and enforced by the executive having charge of any institution or group of institutions or noninstitutional agencies or any phase of the work within the jurisdiction of the department.
In order to implement the public policy of this State concerning the provision of charitable, hospital, relief and training institutions established for diagnosis, care, treatment, training, rehabilitation and welfare of persons in need thereof, for research and for training of personnel, and in order that the personnel, buildings, land and other facilities provided be most effectively used to these ends and to advance the public interest, the commissioner is hereby empowered to classify and designate from time to time the specific functions to be performed at and by any of the aforesaid institutions under his jurisdiction and to designate, by general classification of disease or disability, age or sex, the classes of persons who may be admitted to, or served by, these institutions or agencies.
In addition to and in conjunction with its general facilities and services for the mentally ill, mentally retarded and tuberculous, the department may at its discretion establish and maintain specialized facilities and services for the residential care, treatment and rehabilitation of persons who are suffering from chronic mental or neurological disorders, including, but not limited to alcoholism, drug addiction, epilepsy and cerebral palsy.
The chief executive officer of each institution is responsible for the care and treatment of the residents, subject to the rules and regulations of the Commissioner, N.J.S.A. 30:4-5, and has custody and control of each resident until discharge. N.J.S.A. 30:4-6.
The statutes specifically provide that the Commissioner may order a transfer of "any inmate of any correctional institution *97 * * * to any charitable, hospital, or other similar institution * * *." N.J.S.A. 30:4-84. If the period of confinement is less than 30 days, the Commissioner's order of transfer is sufficient authority for the transfer and treatment. Id. Thereafter the prisoner is entitled to a commitment hearing under N.J.S.A. 30:4-82. Most significantly with respect to transfers within the state phychiatric hospital system, N.J.S.A. 30:4-83 provides:
Any inmate of any charitable, hospital, or other similar institution as classified in section 30:1-7 of this Title may be transferred to any other charitable hospital, or other similar institution, by order of the commissioner in accordance with the formally adopted rules of the State board either upon the initiative of the commissioner or upon the application of the chief executive officer.
See also, N.J.S.A. 30:4-83.1 as to the Commissioner's duty to give notice of transfer.
The Commissioner contends that this broad delegation of authority to herself and her subordinates surely includes the power to decide where within the state psychiatric hospital system a resident should be placed. We agree and conclude from the general powers conferred upon the Commissioner by N.J.S.A. 30:1-12, the specific transfer power conferred by N.J.S.A. 30:4-83, and the entire statutory scheme, that the Legislature intended the Commissioner to have power to determine where a convicted inmate-patient will be assigned within the system and when the patient should be transferred. We think it unlikely that the Legislature intended to repose a concurrent transfer and placement power in the many County and Superior Court judges hearing these Class "E" commitment cases under N.J.S.A. 30:4-82, involving convicted and sentenced prisoners. The statutory scheme contemplates a fundamental distinction between commitment in contrast to placement and treatment. Commitment is properly a judicial function, but questions of placement and transfers within the system are the Commissioner's responsibility.
*98 The current court rule on civil commitment, R. 4:74-7, does not attempt to override the statutory framework and is facially applicable to only Class "A", "B" and "C" involuntary civil commitments. R. 4:74-7 therefore provides no support for the argument advanced by Patterson and Bohuk. The Public Advocate also urges upon us the decisions of the Supreme Court in State v. Carter, 64 N.J. 382 (1974), and State v. Krol, 68 N.J. 236 (1975), as authority for a liberal interpretation of the jurisdiction of the trial court to place and transfer Class "E" inmate-patients. Carter and Krol set down the standards for the treatment and conditional release of persons found not guilty by reason of insanity and have no bearing on the right of the Commissioner to retain sentenced inmate-patients, convicted of violent crimes, in maximum security during their period of treatment when she deems this necessary for the public safety or any other valid reason.
The Public Advocate contends that N.J.S.A. 30:4-24.2(e)(2), which extends to patients in the psychiatric hospital system the "right to the least restrictive conditions necessary to achieve the purposes of treatment," mandates the result reached by the trial judge. A literal adoption of this contention would require a court, or the Commissioner, to ignore entirely the inmate-patients' status as persons convicted of violent crimes, and focus only on the clinical and therapeutic needs of the patients. We note that N.J.S.A. 30:4-24.2 contains a safety valve. Subsection (g) permits the director to suspend a patient's rights under subsection (e), which includes "least restrictive conditions," if the director of the program "feels it is imperative to deny these rights." There is nothing in N.J.S.A. 30:4-24.2, adopted as the patients' "Bill of Rights" by L. 1975, c. 85, § 2, effective May 7, 1975, even remotely suggesting a legislative intention to require the courts or the Commissioner to ignore a convicted inmate's custodial status while he is a patient in a psychiatric hospital. Indeed, the clear language recognizes the occurrence of exceptional cases and provides for them. *99 The Commissioner in her discretion may properly recognize the concomitant goals of treatment of the patient, and public security, in her placement decision.
One of the considerations motivating the trial judge to order the transfers from the Forensic Section to a minimum security hospital was an alleged improper denial of parole to Patterson and Bohuk because of their mental illnesses. Our trial courts do not review the decisions of the Parole Board. Any challenge thereto must be by direct appeal to the Appellate Division. R. 2:2-3(a)(2); Monks v. New Jersey State Parole Bd., 58 N.J. 238, 242 (1971); Johnson v. New Jersey State Parole Bd., 131 N.J. Super. 513 (App. Div. 1974), certif. den., 67 N.J. 94 (1975).
Since we have concluded that the assignment of these patients within the State's mental health system is committed legislatively to the sound discretion of the Commissioner, review of her action is not for the trial courts but by appeal to the Appellate Division. Review of the actions of state administrative agencies is solely for this court. R. 2:2-3(a)(2). Pascucci v. Vagott, 71 N.J. 40, 52 (1976); Central R.R. Co. v. Neeld, 26 N.J. 172, 184-185 (1958), cert. den. 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958). In McCorkle v. Smith, 100 N.J. Super. 595, 600-602 (App. Div. 1968), this court specifically held that judicial review of the transfer of an inmate from State Prison to a state mental hospital was by appeal to this court. See State v. Clark, 54 N.J. 25 (1969); State v. Miles, 87 N.J. Super. 571, 585-586 (Law Div. 1965), aff'd 94 N.J. Super. 169 (App. Div. 1967).
We think it advisable to reach the merits of this controversy. The matter has been pending for over a year and an adequate record was developed in the two-day hearing before the trial judge. We apply the standard of review pertinent to appeals from determinations by administrative agencies, i.e., whether there was sufficient credible evidence to support the administrative decision, so that it may not be characterized as unreasonable, arbitrary or capricious. Campbell *100 v. Civil Service Dep't, 39 N.J. 556, 562 (1963); cf. Guerrero v. Burlington Cty. Memorial Hosp., 70 N.J. 344 (1976).
As to Patterson, there was ample credible testimony developed at the hearing that he was potentially assaultive, self-destructive, psychotic and uncooperative in therapy. He is sustained on heavy tranquilizing medication which he could more easily refuse at the Ancora State Hospital. If he does not take the medicine, his level of dangerousness increases. He is presently serving a 13-to-15 year State Prison sentence for the rape of an employee at the Ancora State Hospital while under a civil commitment.
As to Bohuk, there was ample credible evidence produced at the hearing that he, while previously a patient at Marlboro, had been occasionally assaultive towards other patients and had left the hospital grounds without permission. The evidence shows Bohuk made very little, if any, therapeutic progress during his previous stay at Marlboro. The Marlboro psychiatric staff testified that Bohuk should not be transferred to their institution. Bohuk was termed an active homicidal and suicidal risk as recently as November 1976 when last transferred from State Prison to the Forensic Section. He is serving a life term for murder.
As the trial judge noted, both Patterson and Bohuk are, in the opinion of all phychiatrists who examined them, dangerous to themselves and others. 148 N.J. Super. at 517-518.
The State's phychiatrist from the Forensic Section felt both inmate-patients would do better in a regular psychiatric hospital. The staffs of the hospitals at Ancora and Marlboro thought that the inmate-patients should stay in the Forensic Section. To a large extent this case represents an intra-agency medical and security dispute. This type of administrative dispute is best resolved by the Commissioner, guided by her presumed expertise and that of her executive staff, subject to the usual standards of appellate review of administrative decisions, rather than by numerous trial courts. *101 State in Interest of D.F., 145 N.J. Super. 381, 387-388 (App. Div. 1976), certif. den. 74 N.J. 260 (1977). We see no basis for interference with her placement of these inmate-patients in the Forensic Section, where escape or injury to themselves or others is less likely. See U.S. ex rel. Schuster v. Herold, 410 F.2d 1071, 1084 (2 Cir.1969), cert. den. 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969).
The orders of transfer entered by the trial judge are reversed and the Commissioner's administrative determination to maintain Patterson and Bohuk in the Forensic Section is affirmed.