197 N.J. Super. 320 (1984)
484 A.2d 1282
BARBARA SMITH, A/K/A BABS GOLDEN, A/K/A BABS SMITH GOLDEN, PLAINTIFF-APPELLANT,
v.
PETER SHAPIRO, ESSEX COUNTY EXECUTIVE; DAVID PASCHAL, DIRECTOR OF HEALTH AND REHABILITATION; MICHAEL DUFFY, DIRECTOR OF THE ESSEX COUNTY HOSPITAL CENTER; ARTHUR AVELLA, MEDICAL DIRECTOR, ESSEX COUNTY HOSPITAL CENTER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 1984.
Decided December 7, 1984.
*322 Before Judges KING, DEIGHAN and BILDER.
Joseph H. Rodriquez, Public Advocate of the State of New Jersey, attorney for appellant (Daniel Baer, Assistant Deputy Public Advocate, of counsel and on the brief).
David H. Ben-Asher, Essex County Counsel, attorney for respondents (Patrice M. Connell, Assistant County Counsel, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This case involves the right of a patient in a county psychiatric hospital to receive mail and unopened correspondence as guaranteed by N.J.S.A. 30:4-24.2(e)(7), a section of patients' "Bill of Rights," L. 1975, c. 85, § 1, et seq. The defendants contend that plaintiff's sole remedy is through resort to the federal courts because of a settlement agreement and order entered by a federal judge in Goodwin v. Shapiro, 545 F. Supp. 826 (D.N.J. 1982).
We disagree with the Law Division judge and reverse. We conclude that plaintiff may resort to the judicial remedy created by our Legislature[1] for any alleged violation of her rights as a patient and need not resort to the federal court or its mediator.
*323 Plaintiff has been a voluntary patient and resident at the Essex County Hospital Center since 1956. She had been diagnosed as a schizophrenic and suffers from a delusion that she is a physician. She receives occasional mail at the hospital addressed to her known aliases, "Dr. Babs Golden" or "Dr. Barbara Smith". Her treatment team decided that she should not receive mail addressed to those names. The team thought receipt of this mail fostered her delusion and was poor for her therapy. This suit was brought in April 1983 to contest the legality of that decision. The suit claimed a right to relief under 42 U.S.C.A. § 1983 and also under State law, N.J.S.A. 30:4-24.2(h).
Defendants filed a motion to dismiss for failure to exhaust administrative remedies and "because plaintiff's claims are res judicata." The Law Division judge dismissed the complaint for failure to exhaust the administrative remedies contained in the Goodwin v. Shapiro settlement agreement.
Goodwin was brought pursuant to 42 U.S.C.A. § 1983 by 16 past and present patients, not including the present plaintiff, of the Essex County Hospital Center in 1980. In Goodwin the
Plaintiffs sought declaratory relief and an injunction restraining defendants from maintaining conditions and pursuing policies which they alleged deprived them of their right to meaningful treatment; subjected them to inhumane and unsafe environmental factors, such as physical abuse and overcrowded ward conditions; deprived them of effective medical care; confined them in unduly restrictive ward settings; deprived them of their fundamental personal and civil rights; and denied them access to their own funds. [Ibid.]
The action was certified as a class action pursuant to Fed.R. Civ.P. 23(b)(2), "with the class consisting of all past, present and future patients at the Essex County Hospital Center." Id. at 827.
*324 On July 20, 1981 the parties entered into a stipulation of settlement "resolving all matters raised by the lawsuit." Ibid. Settlement set forth the "rights, standards and services", required by the Essex County Hospital Center in such areas of safety and maintenance of the physical plant, treatment, staffing, quality control, and nutritional standards. Id. at 827-848. As part of the settlement, the parties agreed that its terms would be monitored by a court-appointed master. Id. at 849-851.
In the case before us the judge reasoned that the plaintiff's allegations, even though "not specifically designated as a problem" in Goodwin, should be handled by the Goodwin master under the authority to mediate "any disputes that arise among or between the parties." Id. at 850, (Section XII(11)(d) of the settlement agreement). Despite finding that "the [master] was not strictly an administrative agency under R. 4:69-7 ...", the judge held that
This matter should first proceed through the mechanism of the agreement and if no resolution can be agreed upon or arrived at it should be handled by the federal court which retained jurisdiction over the matter.
He further stated
I have already indicated that I find that the agreement is controlling, that it encompasses although it doesn't specify the problem of mail even though that specific issue may not have been a part of the original complaint, I find as I said before that it certainly falls within the purview of the deprivation of fundamental personal and civil rights alluded to by Judge Stern in describing the nature of the action involved before him.
In conclusion, the judge found that while the doctrines of res judicata and collateral estoppel were inapplicable, the "Goodwin agreement encompasses this kind of problem [and] as such this constitutes a failure to exhaust the remedies available under the Goodwin agreement."
The issue here is whether the Goodwin agreement may or should be interpreted as providing the exclusive avenue of redress for the alleged denial of plaintiff's statutory, and possible constitutional, right to receive mail.
*325 At the outset, we resolve an issue that is a "red herring", argued vigorously by both parties in their briefs but not applicable to the present dispute  i.e., the requirement of exhaustion of administrative remedies pursuant to R. 4:69-5. Defendants contend that the monitoring section of the Goodwin agreement is an administrative remedy that must be exhausted before this action in lieu of prerogative writ can be maintained.
R. 4:69-5 provides in part
[E]xcept where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.
Defendants utilize much of their brief urging that R. 4:69-5 required plaintiff to seek redress of her grievances through the Goodwin agreement before she could bring suit in state court. Defendants' allegations in this area are erroneous. The Law Division judge found that the monitoring mechanism of the Goodwin agreement was "not an administrative agency under R. 4:69-5...." This finding is not contested on appeal.
A contrary finding by the Law Division judge would have been error. While a private agreement might create an administrative agency within the intendment of R. 4:69-5, see Garrow v. Elizabeth General Hospital, 79 N.J. 549, 560 (1979), that agreement first must meet certain prerequisites of an administrative agency. Generally, an administrative agency has the power to effect the rights of private parties through either adjudication or rule making. See N.J. Administrative Procedures Act, N.J.S.A. 52:14B-2(a); 1 Davis, Treatise on Administrative Law, § 1.2 at 9 (2d Ed. 1978); Final Report of the Attorney General's Commission on Administrative Procedure, Senate Document No. 8, 77 Cong., 1st Session, 7 (1941) (defines administrative agency as possessing the "power to determine, either by rule or decision, private rights and obligations."). The master, pursuant to the monitoring agreement in Goodwin, has neither of these powers. See Monitoring Agreement, § XII reprinted at Goodwin, 545 F. Supp. at 849-851.
*326 In addition to the master's powers to monitor compliance with the agreement and submit reports to the court and the parties regarding the level of compliance, id. at 849-850, the master also serves
as the mediator of any disputes which may arise among or between the parties with regard to levels of compliance with any aspect of this Agreement. (Emphasis added). [Id. at 850 (Section XII(11)(d)].
Mediation, by its common meaning, does not envision binding adjudication or rule making, but rather it describes "the act of a third-party who interferes between two contending parties with a view to reconcile them or persuade them to adjust or settle their dispute...." Black's Law Dictionary, 4th ed. at 885 (1979). See N.J.A.C. 19:12-3.3 which describes the function of a mediator in the context of the Public Employment Relations Committee "to assist all parties to come to a voluntary agreement."
Moreover, the Goodwin agreement further limits the power of the court-appointed master in § XII(4):
4. Notwithstanding the powers enumerated for masters pursuant to Federal Rule of Civil Procedure 53 or related case law, the Master herein shall possess exclusively the powers set out in this Agreement. [Goodwin, 545 F. Supp. at 849-850].
Pursuant to Federal Rule of Civil Procedure 53, a special master is given various powers which include the authority to conduct hearings in accordance with the requirements of due process.
The court-appointed master in Goodwin is not an administrative agency in any traditional sense as he lacks the authority to either adjudicate or to make rules. Absent the existence of an administrative agency, there is no requirement of "exhaustion of administrative remedies" under R. 4-69-5.
Further, the Law Division judge's reliance on federal Judge Stern's comment, contained in the preface of the Goodwin settlement agreement, was misplaced. Judge Stern's statement that "plaintiffs sought declaratory relief and an injunction *327 restraining defendants from maintaining conditions and pursuing policies which ... deprived them of their fundamental personal and civil rights ..." is a recitation of plaintiff's allegations, not an actual comment on the scope of the settlement agreement. 545 F. Supp. at 826. The settlement agreement itself was the binding document and recited that "no determination or agreement is intended or reached [in the settlement] regarding the validity or invalidity of the allegations of the complaint in this action." Id. at 828, par. 1. Nevertheless, the judge found that the present dispute falls "within the umbrella of the allegations in Goodwin dealing with a deprivation of fundamental personal and civil rights because that is what the plaintiff is essentially saying here...."
We disagree and conclude that the Goodwin agreement in no event was intended to govern plaintiff's claim. The Goodwin agreement, by its terms, dealt specifically with numerous areas of concern about the general maintenance of the hospital and the pursuance of certain institutional policies within the Essex County Hospital Center. For an index to the Goodwin agreement, see 545 F. Supp. at 827. The agreement provided "rights, standards and services" which must be followed with regard to the patient population as a class. The court-appointed master, through the power bestowed upon him in the monitoring agreement, was an official through whom the patients, as a class, could monitor defendants' compliance and meet and discuss allegations of noncompliance, 545 F. Supp. at 849-850, and, in the event that the master could not resolve the dispute, refer the matter to the federal District Court, which had retained jurisdiction for resolution.
The agreement does not lend itself to an interpretation that it was intended as the exclusive mechanism for all initial redress where a dispute involved any tension between an individual *328 patient's personal and privacy rights and the clinical decision of the patient's treatment team. Rather, it apparently was intended to provide a mechanism by which certain general policies would be implemented, 545 F. Supp. at 849, § XII(1), i.e., improvements of the physical conditions and institutional policies which would result in the overall guarantee of the patients' federal and state constitutional and statutory rights to humane treatment. Id. at 828, par. 1.
We also conclude that the Goodwin agreement was not intended to restrict a patient's existing means of redress but was designed to augment or supplement existing remedies. The purpose of the Goodwin agreement was stated at 545 F. Supp. at 828, par. 1.
1. This agreement is entered into in light of the parties' concern that requirements of the federal and state constitutions and of federal and state statutes regarding patients' treatment and patients' rights are satisfied, and in order to provide to patients other guarantees which the parties regard as important as a matter of public policy.
Thus the agreement specifically reinforced existing state and federal constitutional and statutory rights while at the same time providing "other guarantees." This language, along with other expressions throughout the agreement, see e.g., id. at 828, par. 4; id. at 849, XI(q), demonstrated that the Goodwin agreement was meant to strengthen existing remedies, not to supersede established rights.
For instance, the agreement states
4. The rights, standards and services set forth herein shall be implemented within the context of the public policy declared in N.J.S.A. 30:4-23, et seq. ... [Id. at 828, par. 4].
The public policy expressed in this statute, commonly called the patients' "Bill of Rights," insures that patients may enforce their rights, "by civil action or other remedies otherwise available by common law or statute." N.J.S.A. 30:4-24.2(h). See In re Hospitalization of Patterson and Bohuk, 156 N.J. Super. 91, 98 (App.Div.), certif. den., 77 N.J. 469 (1978).
*329 With regard to the issue of receiving mail, the patients' "Bill of Rights" provides specific guidelines.
N.J.S.A. 30:4-24.2(e):
e. Each patient receiving treatment pursuant to this Title, shall have the following rights, a list of which shall be prominently posted in all facilities providing such services and otherwise brought to his attention by such additional means as the commissioner may designate:
* * * * * * * *
(7) To have ready access to letter writing materials, including stamps, and to mail and receive unopened correspondence.
This right to receive mail may be modified only in accordance with N.J.S.A. 30:4-24.2(g)(1) which says
A patient's rights designated under subsection e. of this section may be denied for good cause in any instance in which the director of the program in which the patient is receiving treatment feels it is imperative to deny any of these rights; provided, however, under no circumstances shall a patient's right to communicate with his attorney, physician or the courts be restricted. Any such denial of a patient's rights shall take effect only after a written notice of the denial has been filed in the patient's treatment record and shall include an explanation of the reason for denial.
As noted, the "Bill of Rights" confers jurisdiction upon our courts to enforce these rights. A patient is "entitled to enforce any of the rights herein stated by civil action." N.J.S.A. 30:4-24.2(h).
We cannot hold that the Goodwin agreement, even if in any sense applicable to this plaintiff and her predicament, explicitly or implicitly took away her right to bring an action to challenge the decision of the hospital's medical staff, no matter how well meaning, to deprive her of the right to receive certain mail. We hold that the Goodwin agreement was designed to augment and implement patients' rights. It was not designed to extinguish or to diminish all preexisting State statutory or constitutional rights to sue in our courts to correct individual grievances unrelated to that class action.
Reversed.
NOTES
[1] N.J.S.A. 30:4-24.2(h) says

Any individual subject to this Title shall be entitled to a writ of habeas corpus upon proper petition by himself, by a relative, or a friend to any court of competent jurisdiction in the county in which he is detained and shall further be entitled to enforce any of the rights herein stated by civil action or other remedies otherwise available by common law or statute.